Yes, good morning. Good morning. Let me apologize for being late. Welcome to San Francisco traffic, or bridge traffic. It's particularly bad when my distinguished colleague comes from Minnesota and arrives ahead of me. He should have come on his plane, I guess. I think the easiest way to cut through the paperwork is to take a short look at the report of Dr. Soon and the report of Dr. Anderson. And I brought some extra copies, if that would help, so people don't have to find them in the record. You can give those to the clerk to hand up. Okay.  Here we go. The basis of the district court opinion and the main argument on appeal on that faith issue is that these two doctors reliably assessed the extent of the chronic pain and fatigue and whether or not that was disabling or not. The briefs talk about this diagnosis and that diagnosis, but at the beginning and at the end, the issue is whether or not Mrs. Collier had too much pain and fatigue to work. Well, that's really not the issue, is it? The issue is whether the insurance company responsibly dealt with the claim. It's not the insurance company is not responsible for bad faith just because in the end adjudication goes against them. That's correct. You've posed the question for whether she's entitled to an award, and the result of the jury trial was that she was, although there's an issue hanging over that. But that doesn't answer the question you're trying to assert to us now. What made the insurance company's denial of that claim in the first instance something in bad faith? Right. And the way that I can most easily show that is by reference to these two reports. Well, maybe, but that's going to be kind of a long shot because it disregards the surrounding universe as what the insurance company relied upon. If you come in and say, well, my evidence says I win, that doesn't answer the bad faith question. It's the same problem. Well, the question is whether or not it's reasonable to rely upon these two reports. No. Again, you've got it backwards. It's not what the plaintiff's claim is based upon. It's did the defendant have enough to be able to say, look, we're not going to pay based on that. Right. Well, that's right, but that's not what you're telling us about. You want to talk about your evidence, not about the evidence that did not favor your client's claim. And that's what I think we have to deal with. These are the two defense medical – the two defense medical doctors. Okay. These are the two insurance company doctors that I'm talking about. This is what the insurance company says justifies their decision. Okay. So – Mr. Hitler, do you have a copy of the specific things he's referring to? Did he give you a copy? All right. Thank you. Okay. And if you put these two documents side by side, the most cursory reading shows that they're inconsistent with each other. Now, we know that Mrs. Collier had an ankle surgery in 2002, that there was a second and more significant ankle surgery in 2004, which included a fusion of the ankle, that her work was modified to limit the amount of time that she was on her feet because of the pain from that ankle condition. Well, the record appears – Now – Counsel, the record appears – Counsel, I'm over here. Yes. The record appears to suggest that your client may not have been entirely cooperative. They had some difficulty, it appears, getting her information, and then there appears to be some disagreement among various people as to exactly what was going on here. How does this amount to the very high standard of bad faith? Well, this is a motion for summary judgment. So any issue which is legitimately disputed for present purposes has to be called in our favor, not in favor of the insurance company. Well, that's entirely true. However, it has to meet a certain standard. The dispute has to be a genuine issue of material fact. Well, yes. And the material facts upon which the insurance company relied are in these two documents. Are in where? These are the primary documents upon which the insurance company relied. So, according to Dr. Soon, Mrs. Collier had scars on her ankles, and she had an ankle fusion in 2004, and he finds that she needed accommodations to work because of complications from that ankle fusion, basically limiting the time on her feet. Dr. Anderson finds no scars on the ankles, in fact, is not aware of the ankle surgeries, and thinks that she had knee surgeries, which she did not. So it doesn't take much to start raising some questions about how carefully the insurance company read these reports. Because at least one would think there would be a question raised about, you know, whether it was an ankle surgery, two ankle surgeries, or knee surgeries. And if there were knee surgeries, as Dr. Anderson says he can see scars from them, then the insurance company has no record of those surgeries, and they've got a big gap in their record now. In fact, there weren't any knee surgeries. And that has to cause a little pause, because that's a pretty big error. Dr. Soon. Are you planning to address the issue raised in the cross-appeal, the collateral estoppel issue? Sure. You've used most of your time now, and it seems to me that's kind of hanging over the whole case. I'd be happy to turn to that. So why shouldn't there be collateral estoppel here? The first decision made in this case was by Reliestar. And Reliestar found Mrs. Collier was disabled from working in her own occupation. It's the first decision. So if collateral estoppel applied, then it should be the retirement board that, I mean, they're the second. Are you serious that an insurance company's decision has collateral estoppel effect as a judicial decision? Is that what you're arguing? No. Okay. No, I'm not arguing that. What I'm saying is that collateral estoppel does not apply when you have multiple conflicting decisions. Well, wait, wait, wait. How do manufacturers get sued for a defect? Do they have to win every case? They've got to win a judicial or administrative hearing. And the standard changed after two years. So I'm not sure why you think the first decision lasts forever. But we have a hearing, an administrative hearing that produced a result. The argument that's been made, that should have collateral estoppel effect. The district court concluded that it shouldn't based on its conclusion that your client did not have a fair opportunity to litigate based upon her physical pain and inability to afford counsel. It's been argued that the standard is not whether you availed yourself of the opportunity, but whether you had the opportunity. And I'm waiting to find out what it was that she didn't have a fair opportunity to litigate at that time. Instead, you're telling me about an insurance company's decision, which seems to me kind of off the point. So why didn't she have a fair opportunity to litigate in front of the administrative hearing? I thought that Judge Conte covered that very well. I have nothing to add. You have nothing to add? Nothing to add on that particular point. But collateral estoppel, and I think this is in our third brief, the policy is that there's been a decision made and you shouldn't have to keep relitigating the decisions. And this is an unusual case. I think that's their point. Yes. Okay. But the first decision, the first decision that binds these parties is their agreement under the contract that she was disabled from working in her own occupation. Well, wait a minute. And that's your argument. That's it? We stop there? No. I held my brief. I hope not. I mean, this is a pretty standard disability type of policy. Right. So you have a period of time under which she is given a more lenient standard, which is her occupation, and then after a period of time it switches to a more stringent standard, which is any reasonable occupation. Right. And so it's the – just a minute. What Judge Clifton was talking to you about was not the first period which had passed. I assume you don't disagree with their position with respect to the first period, since they provided your client with benefits, right? Right. That is out of the picture. The second period is what is in force. That's what the hearing was about. Well, the hearing was about whether or not she could do her own occupation or whether she was unable to do her own occupation with the accommodations provided through the interactive process that is part of these disability retirement hearings, whether or not the county could create accommodations sufficient that she could do her regular occupation, because that's the test that they're looking at, or whether she is permanently incapacitated from that. And that is different. And she had a hearing. She had a hearing. Right. And she lost. But it's a fundamentally different issue than the one under this insurance policy, which is whether or not she can work without these special accommodations in any occupation. It would seem to me it would be more favorable to your client, not less favorable. It could be either way. It's a different issue, and it depends on what the accommodations are. I don't know that it's a different issue. It's a different take on the issue. But it's more of a completely different issue. It's as different as it is to say own occupation than any occupation. And the any occupation that they say she can do is her own occupation. Then she can do an occupation, correct? Right. Right. So she can do an occupation, namely her own. All right. Did you want to save your remaining time for rebuttal?  Thank you. All right. Good morning, Your Honor. And may it please the Court. I'm William Hitler representing the Appellee & Cross Appellant, Reliastar Life Insurance Company. The issue that Judge Ponte addressed and decided in favor of Reliastar on the summary judgment motion was, first and foremost, that no factual dispute existed as to what steps Reliastar took on Ms. Collier's claim. There was no dispute either as to the its work to obtain records from Ms. Collier's treating physician in Panama, its retrieval of or being provided with a copy of the IME from Dr. Soong, the labor market survey, the medical records review from Dr. Kahn, and the IME with Dr. Anderson. Counsel has suggested that creating an issue of fact at summary judgment is enough to overturn the district court's decision. I'm looking at the Wilson v. 21st Century Insurance Case, Supreme Court of California, 2007. And that, in that case, the Court pointed out that even where the plaintiff's version of the facts creates a genuine issue of liability, that does not preclude the Court from making a finding that for purposes of whether the insurer's investigation was reasonable and done in good faith, that it may proceed to look at bad faith as a question of law. The other important part of Judge Conte's opinion on bad faith is that the – it could have considered other information. The issue was whether Reliostar's reliance upon those physicians, including Dr. Kahn who reviewed the medical records, was reasonable. And the Court found that, in this case, Reliostar's reliance was reasonable, in part because there was no challenge to the opinions. There was no challenge to the methodology that the physicians used. So, in other words, the Court did not focus so much on the intricacies or the minute details, but acknowledged that, in this case, Reliostar did what was necessary, what was reasonable, what was appropriate to assess this kind of situation. It's also important to note that, with regard to the – its efforts to obtain the medical records in Panama, that it simply did not have any medical records. Ms. Collier was in Panama from March of 2008 until the fall of 2009. And so, even at the time that it rendered its decision in April of 2009, terminating her benefits initially, it didn't have those records from Dr. Ortega. So it was very important that it exerted necessary efforts to get the records, translate them, review them, provide them to the medical physicians. Even if – even assuming, hypothetically, that Ms. Collier did present evidence challenging the doctor's opinions, and for purposes of the argument, it's – it's fair – it is undisputed that she, on her appeal, relied upon Dr. Ortega's opinions. She relied upon Dr. Mason's statements, her treating physician before she went to Panama. But even if – even if those physicians had a good basis for their opinions, that only leads to the existence of a genuine dispute. It does not lead to a conclusion that the district court erred because Relistar should have chosen the treating physicians as opposed to the physicians that it did rely upon. I'd also point out that a case that was rendered by this Court in 2002, the Ayers case, Ayers or Ayers v. Standard Insurance Company, it's cited in our brief at 51F Federal Appendix 222, involved almost identical facts. There, the insurer looked at all the medical records, had an independent medical examination, two medical record reviews and a vocational assessment, and the court upheld summary judgment in favor of the insurer. Unless there are questions from the Court, I can move along to collateral estoppel. I think that would be helpful. All right. Thank you, Your Honor. The issue presented in this case on collateral estoppel is whether the district court applied the correct legal standard. The district court focused on how well Ms. Collier litigated the retirement board proceeding in front of the MCEA. With all due respect, the district court erred by applying the wrong standard. As the Murray case, California Supreme Court, 2010, held following the Utah construction case, it is the opportunity to litigate that is important, not whether the litigant availed himself or herself of the opportunity. Among all the cases identifying what is important for collateral estoppel under the category of full and fair opportunity, there is a reasonably uniform checklist, and that is, did the claimant have the opportunity to present evidence, present expert reports, testify under oath, be represented by counsel, serve discovery, and so forth. All of those opportunities, all of those procedural rights were provided to Ms. Collier. Otherwise, under counsel's theory, then collateral estoppel would have no particular meaning, because, as in this case, if the claimant could have done something different or could have done something better, and that would — such that that would undermine the actual rights the person had going into the initial proceeding, then collateral estoppel could never apply. On a related note, Ms. Collier did have the right to file a writ of mandate of the Board's decision. And specifically, we cited a case in our brief. It's the Corcoran case. That allows one of the arguments to be made as to whether being represented or not being represented is a factor. It also allowed her to challenge whether she had a fair trial. And if that decision was affirmed, then there was another right of appeal from there. And finally, with respect to — Scalia. Excuse me, counsel. There was some suggestion that she was so ill or she was so debilitated that she couldn't participate. The record appears to indicate that she examined and cross-examined some witnesses in this thing. Am I wrong? That's correct. That's correct, Your Honor. The hearing — Judge Conte wrote in his order that Ms. Collier did not present an opening statement. What she did was provide her own testimony. She provided a recitation of the different medical care she had received. That consumed almost 20 pages of transcript. Dr. Soon was the medical witness called. She had an opportunity to both listen to his testimony and ask him some questions about his report and, of course, about his examination of her, given that she was there at the same time. That is correct, Your Honor. With respect to the counsel's comment and the argument that the issues somehow were different in the two proceedings, the MCRE proceeding versus the Reliostar's claimant, in this case that Reliostar — excuse me, the Reliostar's decision on the any occupation portion of the policy, the cases are very clear, that it is not the question posed to the first tribunal. It is whether the issue is the same. And here it is true. What the MCRE was asked to do was determine whether Ms. Collier was permanently disabled from performing her job. It looked at records from August — actually, going back to 2001, but the timeframe it had in mind was August 2007 to June 2010. It determined that she did not meet that standard, even though there's a preference favoring granting of benefits. The very same records, medical diagnoses, and positions were presented then in this case. Well, what I was trying to discuss with your opposing counsel here is that it appears that the job being done by the board here, what is the correct name here? MCRE. MC. Marin County. Right. Right. Would have been more favorable to her than the more — the less, rather, restrictive standard under the second part of the policy. So for force, if she — in other words, the outcome would have had to be the same under both. Correct, Your Honor. Am I wrong or right? That is correct. Ms. Collier had a lesser burden for the MCRE.  That she would have had under the second phase of the policy. Correct. Similar to the own occupation to first 24 months.  In the policy. Does the lesser burden arise in connection with how you define the job, or does it relate at all to the standard at that administrative board, which is to the satisfaction of the board? I believe those are two appropriate questions. The — one of the reasons that the burden was lower before the MCRE is that the way in which the standards or the rules are set up, the issue was whether she was permanently incapacitated from her job, or her job duties, which is even a lower burden than her occupation. I have the proposed order here. I looked at it before this morning. The other issue then — Your Honor, I apologize. I was looking at that instead of recalling the second part of your question, which was — Yes. Yes. Satisfaction. Correct. The standard before the MCRE is to demonstrate to the satisfaction of the board. The standard in the — in this case is preponderance of the evidence. A case we cited pointed out that the dissatisfaction of the board is actually a lower standard than preponderance of the evidence, and there's also case law confirming and affirming that the purpose, the entire purpose of the retirement board and the funds set aside is to provide the best opportunity possible for employees to obtain benefits. Are there further questions from the panel? I think not. Thank you, Your Honor. Mr. Padway, I think you have about a minute plus of small room for your rebuttal. The county's decision to retain or retire an employee depends not only on the employee's abilities, but on the accommodations which the county is prepared to make to keep the employee. That's why this all starts with an interactive process where they say, okay, what is it that you can't do? You've got migraine headaches from the lights. Maybe we can put you in an office which has different lighting. I mean, the concept is that the county either needs to keep the person in their job or retire them. So a lot of what goes into these county retirement decisions is what kinds of accommodations can the county offer. And the balance is that, you know, the incentive to offer accommodations is that if you don't offer enough accommodations, you're going to retire that person. That's a different scheme than this insurance policy. I don't understand your point. What was the county's decision here? Did they decide to retire her? Yes. No, the decision was not to retire her. The decision was that they could accommodate her needs. Okay. Well, if they could accommodate her needs, that suggests that she's capable of employment in her former occupation, which would, of course, mean she's capable of some kind of employment. Well, they haven't added on. So how does that strengthen your argument to us? It depends on whether or not those accommodations that the county is willing to do are what would be considered, you know, reasonable accommodations out in the community. Could she get that? Those are accommodations which are available for one person in one job. Well, she has that opportunity. That means she could be employed. So if the director of rehab services for the State of California is a ventilator-dependent quadriplegic, which he was for a while, yeah, there's one job that he can have. That doesn't mean that he's competitive in the job market. But the issue for your client was not whether she'd be competitive in the job market. If she could get her own old job back, that was enough, wasn't it? Well, it was enough in terms of the retirement board's decision. But that is not to say anything about, I mean, there's, you can be working disabled under an insurance policy. In fact, Applement on Insurance has a whole chapter on it where people are working at jobs which they're not really competitive for in the community, but because they've been doing it a long time, the employer's making special concessions, whatever, they're working despite the pain because they have to. If she could have gotten her old job back, why should the insurance company be expected to pay benefits on the theory that she couldn't get a job? Because she could have gotten her old job back. Because it's not the test that the insurance company has. All right. I think we have your argument in mind. We have your argument in mind. We've given you an extra three minutes already.  We do have the party's briefs as well as your additional copies of papers you've submitted. And the court is adjourned for this morning. Thank you. Thank you. All rise.
judges: Ezra, McKEOWN, CLIFTON